IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CORT THOMAS, § <br> AS THE RECEIVER FOR W. NEIL § <br> "DOC" GALLAGHER, GALLAGHER § <br> FINANCIAL GROUP, INC., AND W. NEIL § <br> GALLAGHER, PH.D. AGENCY, INC. § <br>     PLAINTIFF, § <br> § <br> V. § <br> § <br> GARY HOPKINS, ET. AL, § <br>     DEFENDANTS. § | CASE NO. 3:20-CV-576-S (BK) |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

On referral of the District Judge, Doc. 15, now before the Court is Plaintiff's *Motion for Default Judgment*. Doc. 12. For the reasons outlined here, Plaintiff's motion should be **GRANTED**.

### A.   BACKGROUND

Plaintiff, in his capacity as a court-appointed receiver ("the Receiver"), filed suit against Defendants to recover funds allegedly obtained by Defendants as part of a Ponzi scheme run by the Receivership Defendants. Doc. 1 at 3-4. The Receiver asserted three claims: (1) fraudulent transfer, (2) unjust enrichment, and (3) money had and received. Doc. 1 at 6-8.

The Receiver filed his complaint on March 6, 2020. Doc. 1. Summonses were issued to both Defendants on the same day, Doc. 3, and were returned executed on June 30, 2020. Doc. 9; Doc. 10. Defendants have not filed an answer or responsive pleading. After the period for doing so had passed, the Court ordered the Receiver to move for a default and default judgment, Doc.

11, which the Receiver did. Doc. 12. Subsequently, on July 22, 2021, an evidentiary hearing was held on the motion. Doc. 16, Doc. 18.

## B. FACTS

By virtue of the default and based on the pleadings, evidence, and testimony in the record, the following facts were established: Plaintiff was appointed to act as Receiver for Neil Gallagher ("Gallagher"), the Gallagher Financial Group, Inc., and the W. Neil Gallagher, Ph.D. Agency, Inc. (collectively, the "Gallagher Entities"). Gallagher was a radio personality in Dallas/Fort Worth. Doc. 1 at 3. He also operated an investment group for retirement-age individuals, soliciting investments by promising safe, guaranteed returns. Doc. 1 at 3. This was false. Doc. 1 at 3. In fact, Gallagher only invested a small portion of the funds he received. Doc. 1 at 3. The rest he deposited into a bank account he controlled, commingled the funds with other monies, and used it to make payments to earlier investors in the form of "investment returns"—a classic Ponzi scheme. Doc. 1 at 3-4.

Gallagher also transferred, in the form of loans, some of the ill-gotten funds to Defendants. Doc. 1 at 4. Relevant to this case, Gallagher and his investment group allegedly loaned Defendants approximately $1.3 million (the "Loan").[1] Doc. 1 at 4, 6; Doc. 13 at 40; Doc. 20 at 10, 12, 14. Defendants promised Gallagher they would "double" his money by delivering him bullion. Doc. 20 at 10, 12. Despite repeated correspondence, however, Defendants never delivered the bullion or repaid the Loan. Doc. 10, 12, 14, 16, 18, 20. After being appointed, the

---

[1] Gallagher's scheme was later discovered, he was indicted and pleaded guilty, and the Receiver was appointed to, *inter alia*, preserve all assets owned, controlled, or possessed by the Receiver's defendants. Doc. 1 at 4; Doc. 1-1 at 1-20. As part of his review of Gallagher's finances, the Receiver discovered the Loan to Defendants and, more importantly, that it had not been repaid. Doc. 1 at 4, 6.

Receiver discovered the letters, reviewed the financial records to confirm the Loan had not been repaid, and then attempted to recover the Loan from Defendants by means other than litigation. Doc. 1 at 4-5; Doc. 13 at 5-6; Doc. 20 at 5-7. He was unsuccessful and filed this suit to recover the money. Doc. 1 at 5-6.

### C.    APPLICABLE LAW

Rule 55 governs when and how a default judgment may be entered against a party. *See* FED. R. CIV. P. 55. Entrance of a default judgment is the culmination of three events: (1) default, which occurs when a defendant has failed to answer or otherwise respond to the complaint within the time required by Rule 12 of the Federal Rules of Civil Procedure; (2) the entry of a default by the clerk of court when such default is established by affidavit or otherwise; and (3) plaintiff's motion for a default judgment. FED. R. CIV. P. 55(a); *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).

When a party seeks relief for other than a sum certain, the party must apply to the court, not the clerk, for a default judgment. FED. R. CIV. P. 55(b)(2). It is then the moving party's burden to establish an evidentiary basis for the damages sought. *See Mori Seiki USA, Inc. v. McIntyre,* 2007 WL 2584947, at *1 (N.D. Tex. Sept. 6, 2007) (Boyle, J.). The burden exists because, while entry of a default conclusively establishes the defendant's liability, it does not establish the amount of unliquidated damages. *James v. Frame*, 6. F.3d 307, 310 (5th Cir. 1993).

Nevertheless, by itself, a defendant's default does not entitle a plaintiff to a default judgment. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam). The court has discretion in this regard because "default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Assoc.*, 874 F.2d 274, 276 (5th Cir. 1989). Rather, there must be a

sufficient basis in the pleadings and incorporated documents for a court to enter a judgment by default. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. Even in default, a defendant does not admit facts that are not well-pleaded, nor does he admit any conclusions of law. *Id.* (citations omitted).

### D. ANALYSIS

The Receiver contends that the facts alleged in the complaint support the claims against Defendants. Doc. 14 at 5-8. He requests $1.3 million in damages, attorney's fees of $5,107.50, costs of $620.00, a conditional award of $10,000.00 for an appeal, and pre- and post-judgment interest. Doc. 14 at 9-10.

#### I. Default

The Receiver argues Defendants defaulted by not filing an answer or responsive pleading or otherwise appearing in this suit after they were properly served. Doc. 14 at 4. Upon review, the Court finds that Defendants were properly served, Doc. 9 & Doc. 10, but have not answered or filed any responsive pleading, are well past the deadline to do so, and are therefore in default. FED. R. CIV. P. 12(a)(1)(A)(i) (Defendant must respond within 21 days of service.).

#### II. Fraudulent Transfer

The Receiver argues the $1.3 million Loan was a fraudulent transfer. Doc. 14 at 6. He is correct that the Texas Uniform Fraudulent Transfer Act ("TUFTA") governs the claim. Under TUFTA, the elements of fraudulent transfer are: "(1) a creditor; (2) a debtor; (3) the debtor transferred assets shortly before or after the creditor's claim arose; (4) with actual intent to hinder, delay, or defraud any of the debtor's creditors." *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 117 (5th Cir. 2019). "Shortly before or after" is considered to be a four-year period. *Id.* at 119 (noting that TUFTA establishes four-year period after transfer to bring suit for fraudulent transfer claim). There is an exception though—even if the four-year period has

passed, a claim is still viable if it is brought within one year of the date on which a claimant did or reasonably could have discovered the transfer and known it was fraudulent in nature. *Janvey v. Romero*, 817 F.3d 184, 188 (5th Cir. 2016) (holding that a receiver who discovered a fraudulent transfer over a year after he was appointed, but within a year of reasonably being able to discover this specific transfer, could still bring the claim.).

Here, the Receiver pleaded that the Receiver defendant transferred Ponzi payments to Defendants from 2013 to 2019 with the intent to defraud. Doc. 1 at 6-7. Some of those transfers would be outside the four-year period to bring suit. *Matter of Life Partners Holdings, Inc.*, 926 F.3d at 119. But the Receiver filed this suit within one year of being appointed and discovering the transfer. Doc. 1; Doc. 1-1. Thus, the Receiver's claim is within the exception. *Janvey*, 817 F.3d at 188-191.

The complaint further alleges the Receivership Defendant's transfers, the Loan, *to* Defendants are the fraudulent basis for this claim. This reveals a flaw in the pleadings—somehow, the Receivership Defendants, through the Receiver, are supposed to be both the creditor bringing a claim and the debtor who fraudulently transferred the creditor's funds. Doc. 1 at 6-7. That simply cannot be. This claim must be brought by a *creditor* (here the Receiver for the Receivership Defendant's) against a *debtor* (Defendants), and would require the debtor Defendants to have made the fraudulent transfer. *Matter of Life Partners Holdings, Inc.*, 926 F.3d at 117. In such a transaction, Defendants would only be liable if they had the Receiver's assets and then fraudulently transferred them. *Id.* Yet the Receiver does not allege that Defendants transferred the loan proceeds with intent to defraud. Thus, the well-pleaded allegations of the Receiver's complaint do not establish a fraudulent transfer claim against Defendants.

**III. Unjust Enrichment**

The Receiver also alleges Defendants were unjustly enriched by the Loan. Doc. 1 at 7-8. To satisfy the elements of an unjust enrichment claim, a plaintiff must plead: (1) a person; (2) obtains a benefit; (3) from another; (4) by fraud, duress, or taking undue advantage. *Streamline Prod. Sys., Inc. v. Streamline Manufacturing, Inc.*, 851 F.3d 440, 462 (5th Cir. 2017) (citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). Here, the Receiver alleges that Defendants were unjustly enriched by the Loan and that the Receiver has "superior equitable interest to recover the Ponzi payments . . ." Doc. 1 at 8.

The Receiver incorporates all his prior factual allegations into the claim for unjust enrichment. Considering the pleadings and the proffers and evidence offered in support of the same, the Court finds by a preponderance of the evidence that the Receiver has demonstrated Defendants obtained a benefit—the Loan—by promising exorbitant returns on the investment and payment of those returns within a certain period, when neither happened. At a minimum, the Receiver established that Defendants took undue advantage of the Receivership Defendants by failing to repay the loan—let alone the returns on the investment—as promised, despite Gallagher's inquiries (demonstrated through emails discovered by the Receiver). For these reasons, the Court concludes that the well-pleaded allegations of the Receiver's complaint establish an unjust enrichment claim.

**IV. Money Had and Received**

The Receiver's last claim is for money had and received, alleging the Loans Defendants received, as the by-products of an illegal Ponzi scheme, belongs to the Receivership Estate for the benefit of defrauded investors and creditors. Doc. 1 at 8. The elements of such a claim are: (1) defendant; (2) holds money; (3) which in equity and good conscience; (4) belongs to plaintiff.

*Matter of Okedokun*, 968 F.3d 378, 390 (5th Cir. 2020). Upon review, the well-pleaded allegations of the Receiver's complaint establish the claim. A party who receives money in due course of business, in good faith, and for valuable consideration, even if that money was illegally obtained, can keep it without liability. *Id.* However, as discussed in the previous section, the Loan was not made for valuable consideration.

Moreover, the Receiver alleges in his complaint that Defendants received a loan that was never repaid. Doc. 1 at 4. Because Defendants did not repay the Loan, they owe money that belongs to the Receiver. *See* Doc. 1-1 (the Receiver was appointed to preserve all assets "owned, controlled, or possessed" by the Receiver's defendants). Thus, the well-pleaded allegations supports this claim.

### V. Relief

The Receiver seeks damages, interest, and attorney's fees. Doc. 14 at 10.

**1. Damages**

Although a default judgment conclusively establishes a party's liability, it does not establish the amount of damages. *U.S. for Use of M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (noting that after default, the plaintiff's well-pleaded factual allegations are taken as true *except* regarding damages) (emphasis added). Accordingly, it remains Plaintiff's burden to provide an evidentiary basis for the damages he seeks. *Id.* As shown *supra*, Plaintiff's claim for money had and received is well-pleaded and supported. Thus, damages are appropriate. Under Rule 55(b), the court may conduct hearings to, *inter alia*, determine the amount of damages after a default. FED. R. CIV. P. 55(b)(2). The Court did so here. *See* Doc. 16; Doc. 18.

The complaint alleges $1.3 million of damages in the form of a Loan given to Defendants and never returned. Doc. 1 at 7-8; Doc. 14 at 7-8. In support of this requested amount, the Receiver submitted (1) a declaration detailing how he found the Loan and his investigation into whether it had been repaid by the date of this lawsuit, Doc. 13 at 4-6, (2) a 2017 letter from Defendants to Gallagher acknowledging the $1.3 million in loans, Doc. 13 at 40, (3) a 2016 letter from Defendants to Gallagher referencing the same amount, Doc. 20 at 10, (4) a 2018 letter from Defendants to Gallagher again quantifying the $1.3 million loan amount as well as Defendants' intention to repay the Loan, Doc. 20 at 14, (5) a follow-up letter from Gallagher to Defendants establishing that, as of December 2018, the amount had not been repaid, Doc. 20 at 16, and (6) correspondence from Gallagher's attorney in January 2019 stating that the debt had still not been repaid, Doc. 20 at 20.

The Receiver also testified at the evidentiary hearing that he found the 2017 letter, Doc. 13 at 40, in the Receivership Defendant's office. He was explicit that there was no evidence in any of the documents he found and reviewed that the Loan was ever repaid. He also testified that, as Receiver, he sent Defendants a letter giving them an opportunity to prove the Loan had been repaid—they did not respond. Further, the Receiver testified he had access to Defendant's bank records prior to the receivership order and would have been able to see if the Loan had been repaid. However, nothing in the bank records suggested it had been. Relevantly, the Receiver did find evidence that Defendants repaid *other* loans made by *other* investors associated with the Receiver defendant—but did not make payments on this particular loan. Reviewed as a whole, the evidence demonstrates the Receiver Defendant loaned Defendants $1.3 million, repeatedly asking for the money back, and but never received it. As indicated *supra*, the Court concludes that the Receivership is the proper owner of the $1.3 million loan proceeds never repaid.

### 2. Interest

The Receiver asks for pre- and post-judgment interest on the $1.3 million in damages. Doc. 1 at 9. In support, he submitted a supplemental brief arguing that under TUFTA, damages awarded for fraudulent transfer are subject to pre-judgment interest. Doc. 19 at 2. While he is correct, because the Court concludes the Receiver cannot prevail on the fraudulent transfer claim, the TUFTA provision for pre-judgment interest does not apply.

Prejudgment interest is calculated under state law in diversity cases. *Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002). There are two separate bases for awarding prejudgment interest: (1) an enabling statute; or (2) general principles of equity. *Matter of Okedokun*, 968 F.3d at 392. Because Plaintiff's claims do not fall within any statutory provisions, prejudgment interest is governed by Texas common law. Equitable prejudgment interest focuses on the need to compensate a party for the defendant's beneficial use of the damage funds between the time the injury occurred and the time the judgment was rendered. *Id*. This interest is available as a matter of course. *Id*. Under the facts of this case, awarding prejudgment interest is equitable and should accrue at the same rate as the post-judgment interest. *Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410, 415 (Under Texas law, prejudgment interest accrues at the rate of post-judgment interest.).

Awarding post-judgment interest is not discretionary. *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 456 (5th Cir 2013). It *shall* be allowed on any money judgment in a civil case in district court and will be calculated from the date the judgment is entered. 28 U.S.C.A. § 1961. Federal law applies to "any judgment in a civil case recovered in a district court ... including actions based on diversity of citizenship." *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 7 F.3d 1203, 1209 (5th Cir. 1993) (cleaned up). Accordingly, postjudgment interest on Plaintiff's

9

total award shall accrue at the applicable federal rate. *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991) ("direct[ing] the district court to award post-judgment interest on the entire amount of the final judgment, including damages, prejudgment interest, and attorney's fees"). The Court should award such interest here.

### 3. Attorney's Fees

Receiver finally requests total attorney's fees of $5,787.50, costs of $620.00, and a conditional fee award of $10,000.00 in the event of an appeal. Doc. 1 at 9; Doc. 14 at 8-9. Receiver argues the fees should be awarded under TUFTA. Doc. 14 at 8. But as discussed *supra*, the fraudulent transfer claim cannot stand and thus cannot be the basis for a fee award. Under Texas law, though, the court has the discretion to award attorney's fees for a money had and received claim. *Amoco Production Co. v. Smith*, 946 S.W.2d 162, 165-66 (Tex. App.—El Paso 1997, reh'g overruled). The Court should do so here.

A fee award is governed by the same law that serves as the rule of decision for the substantive issues in the case. *Kona Tech. Corp. v. S. Pac. Transp. Co.,* 225 F.3d 595, 614 (5th Cir.2000). State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision. *Mathis v. Exxon Corp.*, 302 F.3d 448, 462 (5th Cir. 2002). Here, the money had and received claim arises under Texas law, so Texas law will control.

In adjudicating an award of attorneys' fees in Texas, the court starts by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *Rohrmoos Venture v. UTSW DVA Healthcare,* LLP, 578 S.W.3d 469, at

498 (Tex. 2019). Reasonableness is determined using the *Arthur Andersen* factors. *Id.*[2] The fee applicant bears the burden of proof to show sufficient evidence on both counts. *Id.*[3] If such evidence is produced, this amount, this lodestar, is presumed reasonable. *Id.* A court may increase or decrease this lode star, but it must be based on specific evidence outside the usual *Arthur Andersen* factors. *Id.* at 501. While the requested fees must bear a reasonable relationship to the amount in controversy or the complexity of the case, an award is not excessive simply because it is disproportionate to the results obtained. *Northwinds Abatement, Inc. v. Employers Ins. Of Wausau*, 258 F.3d 345, 354 (5th Cir. 2001).

### a. Hourly Rates

Here, Receiver's counsel submitted an affidavit stating that Counsel Kelly Crawford's reduced hourly rate for this case was $340.00 and Counsel Cassie Evans's hourly rate was $225.00. Doc. 13 at 48-49. Counsel's affidavit also states the requested hourly rates are reasonable and similar to, if not below, the hourly rates for other attorney fee awards in this District. Doc. 13 at 48-49. The hourly rates claimed are consistent with those awarded by the Court, and the time spent is similar to that approved in like claims filed in this district. *See, e.g.*, *Ford v. Freemen*, No. 3:18-CV-3095-B, 2020 WL 4808935, *9 (N.D. Tex. July 28, 2020) (Horan, J.) (finding that both an hourly rate of $250 and a total hours expended of 121.2 hours

---

[2] These factors include: (1) the time and labor required, the novelty and difficulty of the issues, the requisite skill to perform the legal services properly; (2) whether acceptance of this case will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the result obtained; (5) the time limitations imposed by the client or case; (6) the nature and length of the relationship with the client; (7) the experience, reputation, and ability of the attorneys; (8) whether the fee is fixed or contingent. *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

[3] Such evidence includes (1) the particular services performed, (2) who performed the services, (3) when the services were performed, (4) the reasonable amount of time to perform the services, and (5) the reasonable hourly rate for each person performing. *Id.*

were reasonable for breach of contract and money had and received claims.) (*adopted by* 2020 WL 4784635 (N.D. Tex. Aug. 18, 2020) (Boyle, J.)).

### b. *Number of Hours*

Plaintiff's counsel's declaration also provided evidence that the case required 18.95 hours of work billed—13.25 hours from Mr. Crawford and 5.70 hours from Ms. Evans. Doc. 13 at 49; Doc. 20 at 23. Billing records are "*strongly* encouraged" to prove the reasonableness and necessity of requested fees. *Rohrmoos Venture*, 578 S.W.3d at 502 (emphasis in original). Upon review of the billing records, Doc. 20 at 22-23, the Court finds the stated number of hours expended are well documented, supported, reasonable, and necessary for the successful prosecution of this action. Thus, Mr. Crawford's lodestar is $4,505.00 and Ms. Evans's lodestar is $1,282.50, for a total of $5,787.50. The Court finds that no reduction or increase in this fee is warranted. Counsel additionally asks for $620.00 total in costs—$400.00 for the filing fee and $220.00 for service fees. Doc. 13 at 52; Doc. 14 at 9; Doc. 20 at 23. Both costs are reasonable and taxable and should be awarded. *Can Capital Asset Serv., Inc. v. Azket E-Intelligence LLC*, No. 3:20-CV-3212-B, 2021 WL 2474159, *6 (N.D. Tex. June 17, 2021) (Boyle, J.). And finally, counsel requests an additional $10,000.00 in anticipation of a possible appeal. Doc. 14 at 49. He came to this number by projecting approximately 30 hours would be spent on appeal, based on the claims and issues. Doc. 14 at 52. Because this is a default judgment case, and any appeal unlikely, the Court should decline to grant that request at this time.

### D. CONCLUSION

This Court recommends that Plaintiff's *Motion for Default Judgment*, Doc. 12, be **GRANTED** and a final judgment be entered in favor of Plaintiff against Defendants. Plaintiff

should be awarded $1.3 million in damages with pre- and post-judgment interest, costs of $620.00, and attorneys' fees of $5,787.50.

**SO RECOMMENDED** on August 26, 2021.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).